FILED

2015 Aug-31  PM 12:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| DERWUN J. KENNEMER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 7:13-cv-01022-KOB-HGD |
| | ) | |
| CHRISTOPHER WEBSTER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

The magistrate judge filed a report and recommendation on July 6, 2015 (doc. 17), recommending that the court grant the defendant's motion for summary judgment (docs. 11, 16). After being allowed an extension of time, the plaintiff filed objections to the report and recommendation on July 27, 2015.  (Doc. 20).

A review of the plaintiff's objections reveals that he simply disagrees with the report and recommendation.  He asserts that, under the facts he alleged, a reasonable jury could infer that defendant Webster actually knew that the plaintiff faced a substantial risk of serious harm from Crenshaw, and therefore, defendant Webster's failure to separate the plaintiff from Crenshaw constituted deliberate indifference to the plaintiff's safety.  (Doc. 20 at 3).  However, as previously stated in the report and

recommendation, under the facts as alleged by the plaintiff, defendant Webster did not fail to act when the plaintiff informed him Crenshaw had threatened to "take him out."  Rather, Webster met with both the plaintiff and Crenshaw, put forth a "living agreement" that the plaintiff refused to sign, and left word for the next shift to keep an eye on the plaintiff and Crendshaw.

The plaintiff relies on *Rodriguez v. Sec'y for the Dep't of Corrections*, 508 F.3d 611 (11th Cir. 2007), for the proposition that the facts of this case are sufficient to state a failure to protect claim pursuant to the Eighth Amendment.  (Doc. 20 at 5-7).  In *Rodriguez*, the plaintiff notified prison officials that he had been a member of a gang, had renounced his membership in the gang, and that gang members wanted to kill him for renouncing his membership.  *Id.* at 614.  Prison officials took no action despite being told by the plaintiff multiple times—and once in writing—that threats were being made on his life by gang members.  *Id.*  These facts are readily distinguishable from those before this court.

As the Eleventh Circuit noted in *Rodriguez*, the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994), held that a prison official may avoid Eighth Amendment liability by demonstrating (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; or (2) "that they knew the underlying facts but believed (albeit

unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent";

or (3) that "they responded reasonably to the risk, even if the harm ultimately was not

averted."[1] *Rodriguez*, 608 F.3d at 617-618 (citing *Farmer*, 511 U.S. at 844).

According to the plaintiff's declaration:

I explained that Crenshaw and I had been involved with each other and
I had just broken off the relationship because Crenshaw was too
possessive and controlling. I also explained to Sgt. Webster that I had
started spending time with another inmate and Crenshaw told me that
before he just set back and accept me being with some white dude he
would take me out the same.

That Sgt. Webster then called for Crenshaw and he came to the shift
office. Sgt. Webster asked Crenshaw, in front of me, what the deal was
with me and him. Crenshaw stated that he was just playing with me, and
I told Sgt. Webster that Crenshaw was not just playing with what he had
said. That I told Crenshaw it was over between us and I would see
whom ever I wanted. Sgt. Webster stated, "I'm not moving neither one
of you, but I will have you sign a living agreement. And both of you can
go back to the Dorm and don't be giving my officers no problem down
there." I then told Sgt. Webster that I was not signing no living

---

[1]As the *Farmer* Court further explained,

A prison official's duty under the Eighth Amendment is to ensure "'reasonable
safety,'" *Helling, supra*, at 33, 113 S.Ct., at 2481; *see also Washington v. Harper*,
494 U.S. at 225, 110 S.Ct. at 1038-1039; *Hudson v. Palmer*, 468 U.S. at 526–527,
104 S.Ct., at 3200-3201, a standard that incorporates due regard for prison officials'
"unenviable task of keeping dangerous men in safe custody under humane
conditions," *Spain v. Procunier*, 600 F.2d 189, 193 (9th Cir.1979) (Kennedy, J.); *see
also Bell v. Wolfish*, 441 U.S. 520, 547-548, 562, 99 S.Ct. 1861, 1878–1879, 1886,
60 L.Ed.2d 447 (1979). Whether one puts it in terms of duty or deliberate
indifference, prison officials who act reasonably cannot be found liable under the
Cruel and Unusual Punishments Clause.

*Id.*, 511 U.S. at 844-845.

agreement because I know that Crenshaw was serious about taking me out the same.  Sgt. Webster got mad and started yelling stated, "you didn't tell me what your not going to do if you don't sign this living agreement I will put you in a two man cell." I told Sgt. Webster that that was better than D-Dorm Box-4 lock-up and I wouldn't be around Crenshaw and he couldn't hurt me there.

That Sgt. Webster then sent Crenshaw back to D-Dorm and told me to go back as well.  I refused to leave the shift office and Sgt. Webster got even madder and started yelling at me and made me go back to D-Dorm. After the change around 6:00 p.m. or 6:30 p.m., Officer Sewell called me out in the hallway and asked was I okay.  That Sgt. Webster passed it over to keep  an eye on me and Crenshaw.  I then asked Officer Sewell could he get me to the shift office to talk to a Shift Commander, and he stated "he would see what he could do."[2]

(Doc. 14 at 10-11).

The plaintiff relies on *Rodriguez* to show that the evidence he submitted created a genuine issue of material fact that he told Webster and, thus, he knew of the serious risk of harm.  (*See* doc. 20 at 1 & 7).  As the magistrate judge noted, however, even if the plaintiff's evidence created a genuine issue of material fact that Webster subjectively knew of the risk, (doc. 17 at 13), his burden of proof did not stop there.

---

[2] In contrast, by affidavit defendant Webster asserted that when he spoke with the plaintiff, the plaintiff told him the disagreement with Crenshaw was "nothing more than a small misunderstanding, and that he could return to his assigned living area without any further problems." (Doc. 11-3, at 1).  Defendant Webster added that he later learned the plaintiff wanted to return to that living area because the plaintiff was in a relationship with inmate Rickie Rutherford, who was also housed in D-Dorm. (*Id.*, at 1-2).  However, this court, as did the magistrate judge, construes the facts to be those stated by the plaintiff for purposes of this motion.

The plaintiff seems to believe that because he may have presented evidence from which a jury could infer Webster knew of the risk, "[t]herefore, Defendant Webster's failure to act, i.e., seperate [sic] [the plaintiff], constituted deliberate indifference to [the plaintiff's] safety." (*See* doc. 20 at 3). As the magistrate judge correctly noted, the deliberate indifference element of his cause of action "has two components, one subjective and one objective." (*See* doc. 17 at 10). Even if the plaintiff met the subjective component with his evidence that Webster knew the plaintiff faced a serious risk of harm, the plaintiff failed to meet the objective component: that Webster failed to reasonably respond to that risk. (See doc. 17 at 10, 11). Instead, Webster responded to the risk both with his attempt to have the plaintiff and Crenshaw sign a living agreement and his request to the next shift to keep an eye on the plaintiff and Crenshaw. These facts demonstrate that defendant Webster was not deliberately indifferent. Nor can the court conclude that Webster's response was objectively insufficient, given the facts alleged by the plaintiff. Therefore, the court OVERRULES all of the plaintiff's objections.

As the magistrate judge indicated in his report, the facts alleged, taken in the light most favorable to the plaintiff, fail to state a viable claim under the Eighth Amendment such that a reasonable jury could find in favor of the plaintiff and against the defendant. Having carefully reviewed and considered *de novo* all the materials

in the court file, including the report and recommendation and the objections, the court ADOPTS the magistrate judge's report and ACCEPTS his recommendation to grant the defendant's motion for summary judgment.  The court EXPRESSLY finds that no genuine issues of material fact exist and that the defendant is entitled to judgment as a matter of law on the plaintiff's claims.

Accordingly, the court finds that the defendant's motion for summary judgment is due to be GRANTED and summary judgment entered in favor of the defendant and against the plaintiff.

The court will enter a Final Judgment.

DONE AND ORDERED this the 31st day of August, 2015.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE